## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No: 2:20-cv-12916 |
| v. | ) ) | Judge: Hon. Terrence G. Berg |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) ) | Magistrate Judge: Hon. Anthony P. Patti |
| Defendant. | ) ) | **ORAL ARGUMENT REQUESTED** |

## DEFENDANT'S PARTIAL MOTION TO DISMISS AND TO STRIKE

Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), by its undersigned counsel of record, submits this motion to dismiss, with prejudice, Plaintiff Anesthesia Associates of Ann Arbor, PLLC's ("A4") Amended Complaint as to state law claims and alleged underpayments related thereto, and to strike to the now-dismissed "Hospital Conspiracy" allegations in the Amended Complaint. Specifically, BCBSM seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted and to strike under Federal Rule of Civil Procedure 12(f).

In support of this motion, BCBSM relies upon the authorities and arguments set forth in the incorporated brief, as well as its attachments.

As required by Local Rule 7.1(a)(2)(A), BCBSM's counsel conferred with counsel for A4 and explained the nature of the motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

Dated: October 21, 2022

Respectfully submitted,

/s/ Todd M. Stenerson
Todd M. Stenerson (P51953)
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

Rachel Mossman Zieminski (*admitted in E.D. Mich*., Texas Bar 24131967)
2828 N Harwood St 18th Floor
Dallas, TX 75201
(214) 271-5777

Rebecca D. O'Reilly (P70645)
Sarah L. Cylkowski (P75952)
BODMAN PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
roreilly@bodmanlaw.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANESTHESIA ASSOCIATES OF ANN ARBOR, PLLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 2:20-cv-12916 |
| | ) | |
| v. | ) | Judge: Hon. Terrence G. Berg |
| | ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) | Magistrate Judge: Hon. Anthony P. Patti |
| | ) | |
| Defendant. | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |

## DEFENDANT'S BRIEF IN SUPPORT OF
## PARTIAL MOTION TO DISMISS AND TO STRIKE

## Table of Contents

TABLE OF AUTHORITIES ......................................................................iv

STATEMENT OF ISSUES PRESENTED.................................................vi

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY .... vii

INTRODUCTION ......................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ...............................3

    I.    The Court's Prior Orders Have Rejected A4's Claim for
Underpayment Damages Arising from an Alleged "Hospital
Conspiracy." ....................................................................................3

        A.    The Original Complaint Based on the Hospital Conspiracy
was Dismissed..............................................................3

        B.    The Proposed Amendments to the Complaint Relating to
the Hospital Conspiracy Were Rejected. ...................................4

    II.    The Court Has Permitted A4 to Seek Underpayment Damages
Arising Only from the Alleged "Blues Conspiracy." ...........................5

    III.    A4 Filed an Amended Complaint That Contains Allegations
Regarding the Hospital Conspiracy and the Blues Conspiracy. ...........6

ARGUMENT ............................................................................................8

    I.    The Court Should Dismiss A4's State Law Claims for Any
Alleged Underpayments to A4 for Anesthesiology Services...............8

    II.    The Court Should Dismiss A4's State Law Claims Because A4
Has Not Plausibly Alleged that BCBSM Acted Illegally or with
Malice. ...........................................................................................9

        A.    A4 Has Not Stated a Claim for Tortious Interference. .............10

        B.    A4's Allegations Do Not Support a Claim of Civil
Conspiracy to Commit Tortious Interference. ..........................11

        C.    A4 Has Not Stated a Claim for Unlawful and Malicious
Threats.......................................................................................13

      D.    A4 Has Failed to State a Claim For Duress. .............................15

III.   The Court Should Also Strike A4's Hospital Conspiracy Allegations Because They Exceed the Scope of the Court's Leave to Amend. ...........................................................................18

      A. A4's "State Law Claims" Rely on the Exact Same Allegations the Court Denied A4 Leave to Amend. ...................................18

      B.    A4's "State Law Claims" Do Not Have Sufficient Linkage to the Blues Conspiracy Claims to Permit Supplemental Jurisdiction. ...............................................................................22

CONCLUSION ......................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351 (Mich. App. 1992) ................................................................................................11

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569 (Mich. App. 2003) .........................................................................12

*Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010) ...........................................7

*Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 404 N.W.2d 725 (Mich. App. 1987) ................................................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................7

*Barnett v. Int'l Tennis Corp.*, 263 N.W.2d 908 (Mich. App. 1978) ........... 16, 17, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................7

*Chrysler Intern. Corp. v. Cherokee Export Co.*, 134 F.3d 738 (6th Cir. 1998) 11, 15

*Early Detection Ctr., PC v. New York Life Ins. Co.*, 403 N.W.2d 830 (Mich. App. 1986) ...................................................................................11

*Gardner v. Wood*, 429 Mich. 290 (1987) ...................................................13

*Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195 (6th Cir. 2011)...........................23

*Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354 (S.D. Ohio 2012) ...............18

*Hungerman v. McCord Gasket Corp.*, 473 N.W.2d 720 (Mich. App. 1991) ... 16, 17

*In re Keithley Instruments, Inc., Deriv. Litig.*, 599 F. Supp. 2d 908 (N.D. Ohio 2009) ................................................................................................18

*Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir. 1986) ....................................8

*Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275; 829 N.W.2d 345 (Mich. Ct. App. 2013)............................................................................. 10, 13

*Lagonoy v. Gun*, 2022 Mich. App. LEXIS 912 (Feb. 17, 2022) ...........................13

*Norton v. State Highway Dep't*, 24 N.W.2d 132 (Mich. 1946).............................16

*Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045 (6th Cir. 2015) .....................................................................8

*People v. Harris*, 845 N.W.2d 477 (Mich. 2014) ............................................ 13, 14

*Prysak v. R L Polk Co.*, 483 N.W.2d 629 (Mich. App. 1992) ...............................10

*Rudzinski v. Rudzinski*, 2022 Mich. App. LEXIS 1264 (Mar. 10, 2022) ...............17

*Szymanski v. Evans*, 438 F. Supp. 3d 790 (E.D. Mich. 2020) ...................................7

*Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007 (E.D. Mich. 2014).............8

*Various Markets, Inc. v. Chase Manhattan Bank, N.A.*, 908 F. Supp. 459 (E.D. Mich. 1995).........................................................................................14

*Verizon Commc'ns v. Trinko*, 540 U.S. 398 (2004).......................................4

*Wheat v. Chase Bank,* No. 3:11–cv–309, 2014 WL 457588 (S.D. Ohio Feb. 3, 2014) ................................................................................................18

**Statutes**

28 U.S.C. § 1367(a) ...........................................................................25

Mich. Comp. Laws § 750.213 .........................................................14

**Other Authorities**

Williston, Contracts, § 1617 (3d ed. 1970)..............................................16

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................2

Fed. R. Civ. P. 12(f) ..........................................................................7

## STATEMENT OF ISSUES PRESENTED

1.    Should the Court dismiss A4's state law tort claims (Counts I-IV) because they improperly seek damages for alleged underpayments for the price BCBSM pays for anesthesiology services in Michigan?

   **BCBSM's Answer:  Yes.**

2.    Should the Court dismiss A4's state law tort claims (Counts I-IV) because A4 fails to plausibly plead wrongful conduct by BCBSM as required by Michigan law and the Court has held that all relevant parties acted in accordance with their own legitimate business interests in any alleged local dispute?

   **BCBSM's Answer: Yes.**

3.    Should the Court strike allegations in A4's Amended Complaint relating to an alleged local conspiracy between BCBSM and Michigan hospitals because they exceed the scope of the Court's order granting in part and denying in part leave to amend?

   **BCBSM's Answer:  Yes.**

4.    Should the Court decline to exercise supplemental jurisdiction over A4's state law tort claims (Counts I-IV) because they lack any rational connection to A4's only surviving federal claim relating to an alleged nationwide conspiracy?

   **BCBSM's Answer: Yes.**

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569 (Mich. App. 2003)

*Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Barnett v. Int'l Tennis Corp.*, 263 N.W.2d 908, 913 (Mich. App. 1978)

*Chrysler Intern. Corp. v. Cherokee Export Co.*, 134 F.3d 738 (6th Cir. 1998)

*Early Detection Ctr., PC v. New York Life Ins. Co.*, 403 N.W.2d 830 (Mich. App. 1986)

*Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195 (6th Cir. 2011)

*In re Keithley Instruments, Inc., Deriv. Litig.*, 599 F. Supp. 2d 908 (N.D. Ohio 2009)

*Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345 (Mich. Ct. App. 2013)

*Norton v. State Highway Dep't*, 24 N.W.2d 132 (Mich. 1946)

*Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045 (6th Cir. 2015)

*People v. Harris*, 845 N.W.2d 477, 483 (Mich. 2014)

*Szymanski v. Evans*, 438 F. Supp. 3d 790 (E.D. Mich. 2020)

## INTRODUCTION

*"BCBS-MI's mere imposition of low prices—absent conspiracy—is not actionable."* ECF No. 52, PageID.1881.

Blue Cross Blue Shield of Michigan ("BCBSM") can set its provider prices in Michigan at whatever level it wants so long as it does not do so as part of a conspiracy. Because this Court found that no such conspiracy existed between BCBSM and any Michigan hospital (the "Hospital Conspiracy"), A4's allegations failed to state a claim that BCBSM's prices for anesthesiology services were illegally low. Therefore, on September 28, 2022, the Court permitted only A4's "Blues Conspiracy" to proceed.[1] Nevertheless, A4 filed an Amended Complaint that ignores the Court's prior reasoning and denial of leave as to any Hospital Conspiracy.

BCBSM moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss A4's state law torts for two reasons. First, A4 tries, once again, to rely upon wholly

---

[1]Since it is now clear that all of A4's claims must relate to the Blues Conspiracy or be dismissed, BCBSM needs to make a prompt decision whether to file a notice of potential tag-along action to transfer this action to the long-running multi-district litigation in Alabama. *See In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406, 13-cv-20000 (N.D. Ala. Jan. 8, 2013) (the "BCBS Antitrust MDL"). Therefore, BCBSM seeks this Court's guidance on the proper scope of the Amended Complaint's allegations. Regardless of where the case is, the parties would also benefit from clarifying the scope of discovery at the outset. Accordingly, BCBSM has filed a motion for an expedited briefing schedule simultaneously with this motion.

local conduct to recover the difference between BCBSM's independently set uniform rate for A4'sanesthesiology services and what A4 believes it should have been paid, now under the guise of state law torts. Second, A4 fails to state a claim on any of its state law torts because it has not plausibly alleged that BCBSM did anything "wrongful," as this Court has twice found.

BCBSM also moves to strike under Federal Rule of Civil Procedure 12(f) because A4's Amended Complaint does not comply with the Court's September 28, 2022 order. That order facially prohibited A4 from amending its allegations related to the Hospital Conspiracy; it permitted A4 to proceed only on its Blues Conspiracy allegations. But A4's Amended Complaint looks virtually identical to the complaint the Court ruled it *could not file*, save for its awkwardly reformulated conclusions under Michigan law. A4 appears to be trying to convert the Court's passing reference that it retained supplemental jurisdiction over state law claims as a *carte blanche* license to recast its rejected conspiracy allegations as state law torts. This Court should (for the third time) preclude A4 from proceeding on its implausible local conspiracy theories.

## BACKGROUND AND PROCEDURAL HISTORY

I.   **The Court's Prior Orders Have Rejected A4's Claim for Underpayment Damages Arising from an Alleged "Hospital Conspiracy."**

    **A. The Original Complaint Based on the Hospital Conspiracy was Dismissed.**

A4's original complaint alleged a local conspiracy between Beaumont, Trinity, and BCBSM, which caused A4 to receive lower reimbursements than it otherwise would have.[2]   The Court found that A4's original complaint could establish nothing more than BCBSM announcing to hospitals the terms under which it was willing to deal with them.   ECF No. 41, PageID.1478 ("A4's Complaint suggests that Defendant on its own determined what it would reimburse Plaintiff."). A4's frustration that it was not paid more, and that Trinity and Beaumont valued BCBSM's customer base above A4's services, was not sufficient to plausibly plead that BCBSM's pricing practices were the result of any conspiracy.[3]   *See id.* at PageID.1479–80.  Put simply, the Court properly ruled that BCBSM has the right to contract, or not contract, with anyone it wants, and to independently set the uniform

---

[2] A4 filed its original complaint in this action on October 29, 2020.  *See* ECF No. 1. BCBSM moved to dismiss, and on September 14, 2021, the Court granted BCBSM's motion without prejudice.  *See* ECF No. 13; ECF No. 41.

[3] *See* ECF No. 52, PageID.1897 ("In its initial Order, the Court determined A4's allegation that BCBS-MI's anti-competitive conduct began in April 2019 and culminated in October 2020, failed to adequately plead a causal link between BCBS-MI's conduct and the alleged injury. Because the artificially low-reimbursement rates A4 cited were from 2018, the alleged injury '*preced[ed]* the time period when the conspiracy was formed.'") (emphasis in original).

rate for anesthesiology services in Michigan. *See id.*; *Verizon Commc'ns v. Trinko*, 540 U.S. 398, 408 (2004).  Absent plausible allegations of a conspiracy, the Court held that A4 could not proceed against BCBSM for damages related to the price levels BCBSM pays A4 for its anesthesiology services.   *See* ECF No. 41, PageID.1479.

### B. The Proposed Amendments to the Complaint Relating to the Hospital Conspiracy Were Rejected.

After the Court's original dismissal, A4 moved for leave to amend its complaint on October 15, 2021. The proposed amended complaint expanded BCBSM's alleged local Michigan hospital conspiracy both in time and in scope, asserting that BCBSM engaged in a conspiracy with *all hospitals in the state*, in addition to Beaumont and Trinity, *going back decades*.   *See* ECF No. 43-2, PageID.1575. When it considered A4's proposed amended complaint, the Court again exercised sound reasoning in rejecting A4's attempt to plead a far larger conspiracy between and among BCBSM and Michigan hospitals state-wide.  ECF No. 52, PageID.1897.  The Court's order rightly found that, among other reasons, BCBSM's choice to use template hospital contracts was unremarkable and insufficient to plausibly plead a horizontal conspiracy among Michigan hospitals. ECF No. 52, PageID.1898–99. Without any other plausibly alleged facts from which to infer a conspiracy, the Court found that hospitals such as Trinity and Beaumont would want to contract with BCBSM, namely because it gave them access to

BCBSM's large customer base. *See id.* at PageID.1899.  The Court therefore *denied* A4 leave to amend its complaint to include allegations related to its so-called Hospital Conspiracy,[4] but A4 did so anyway.

Twice, then, this Court has held that that the uniform rate BCBSM pays to A4 is not actionable unless, at a minimum,[5] it arises from an anticompetitive conspiracy.[6]  Moreover, this Court has twice rejected A4's attempt to plead a local conspiracy among BCBSM and Michigan hospitals as it relates to the uniform rate BCBSM pays for anesthesiology services in Michigan, including to A4.

## II. The Court Has Permitted A4 to Seek Underpayment Damages Arising Only from the Alleged "Blues Conspiracy."

A4's proposed amended complaint also included allegations related to a purported nationwide conspiracy involving the entire Blue Cross Blue Shield System

---

[4] In denying leave to amend A4's allegations related to any Hospital Conspiracy, the Court also found that "A4's proposed amendments fail to address crucial causation issues."  ECF No. 52, PageID.1900.

[5] Pleading an actionable conspiracy is the minimum.  While the Court permitted A4's Blues Conspiracy allegations to remain in the Amended Complaint, it noted that "crucially, at this stage, the Court's holding 'does not resolve the issues of causation and damages,' which A4 will still need to prove to recover."  ECF No. 52, PageID.1910 (citation omitted).

[6] ECF No. 52, PageID.1881 ("BCBS-MI's mere imposition of low prices—absent conspiracy—is not actionable."); *Id.* at PageID.1900 ("Even assuming BCBS-MI possesses significant market power and it "uses that power to obtain 'lower than competitive' prices,' . . . this does not solve the problem of whether the uniform rates are caused by the alleged Hospital Conspiracy.  Indeed, 'even a monopolist is free to exploit whatever market power it may possess when that exploitation takes the form of charging uncompetitive prices.'") (citations omitted).

that are substantially similar to the claims in the BCBS Antitrust MDL. Under its "Blues Conspiracy" theory, A4 alleges that BCBSM conspired with other "Blue" insurers to suppress competition and monopsonize the markets for buying anesthesiology services. ECF No. 43-2, PageID.1596. According to A4, the Blues Conspiracy is enforced through an "amended license agreement" with the Blue Cross Blue Shield Association ("BCBSA"), pursuant to which Blue Cross insurers agree not to compete in each other's service areas and to curtail competition involving their non-Blue affiliates. *Id.* at PageID.1596–97.

The Court *only* permitted A4 to file an amended complaint to include allegations related to the nationwide Blues Conspiracy.

## III. A4 Filed an Amended Complaint That Contains Allegations Regarding the Hospital Conspiracy and the Blues Conspiracy.

On October 7, 2022, A4 filed its Amended Complaint. The Amended Complaint retains nearly all of the allegations related to the Hospital Conspiracy that were in A4's proposed Amended Complaint, apparently under the guise of state law torts. The Amended Complaint does not appear to allege any direct factual link between the Blues Conspiracy allegations and the allegations about the localized dispute that form the basis of the alleged Hospital Conspiracy.[7]

---

[7] BCBSM has repeatedly asked A4 to explain the factual link between the Blues Conspiracy and the Hospital Conspiracy allegations. A4 has refused to provide an explanation. *See also infra* Argument, Section III.B.

## **LEGAL STANDARD**

To survive a motion to dismiss, a plaintiff must allege sufficient facts to support each element of its claims. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Szymanski v. Evans*, 438 F. Supp. 3d 790, 793 (E.D. Mich. 2020) (Berg, J.). "Though this standard is liberal, it requires a plaintiff to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action' in support of her grounds for entitlement to relief." *Szymanski*, 438 F. Supp. 3d at 794 (quoting *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)).

Federal Rule of Civil Procedure 12(f) provides that the Court may, upon a party's motion or sua sponte, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). District courts have ample discretion to strike filings under Rule 12(f). *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1012 (E.D. Mich. 2014) ("A court has 'liberal discretion to strike such filings' as it deems appropriate under Rule 12(f)." (citation omitted)).

## **ARGUMENT**

I.    **The Court Should Dismiss A4's State Law Claims for Any Alleged Underpayments to A4 for Anesthesiology Services.**

A4 has one main gripe with BCBSM—that BCBSM should pay it more.  This is clear in every version of the complaint that A4 has propounded.  This Court has twice dismissed A4's grievances related to an episode involving Trinity and Beaumont hospitals in 2019, where A4 tried and failed to use some hard bargaining tactics against BCBSM.  The Court has ruled that A4's "Hospital Conspiracy" allegations establish only that all parties in the episode acted independently in their own self-interest.  No party acted unlawfully.[8]

The Court has held repeatedly that A4 cannot pursue a claim about BCBSM's uniform rates unless they were set as a part of a conspiracy, and it has held that A4's allegations related to its local dispute do not plausibly allege such a conspiracy.  Yet, A4 has realleged the same allegations and seeks the same relief.  *See* ECF No. 53, PageID.1918 ("Through these actions, BCBSM has succeeded in requiring

---

[8] *See* ECF No. 52, PageID.1899 ("Second, as in *Barry*, there is a good independent reason for each hospital to want to contract with BCBS-MI: guaranteed access to BCBS-MI customers. Relatedly, it is not contrary to a hospital's economic self-interest to partner with BCBS-MI. By pursuing an agreement with BCBS-MI, hospitals are opening themselves up to 'compete for the same consumer's business . . . and give customers *more* options.'") (emphasis in original) (citation omitted); ECF No. 41, PageID.1479 ("While Casalou and Defendant were clearly acting out of their own legitimate business interests, in the email Casalou was relaying potential unilateral actions by the Defendant.").

anesthesiologists in Michigan to accept its below-competitive rate[.]"); *id.* at PageID.1997, 1999 (asserting harm in the form of reduced rates received for anesthesiology prices).  It is apparent from A4's as-filed Amended Complaint, therefore, that it is still trying to collect damages for alleged underpayments related to an alleged local conspiracy.  *See* ECF No. 53, PageID.1918, 1997, 1999.

Since A4's Hospital Conspiracy allegations and state law claims are masquerading as a vehicle to seek damages for alleged underpayments for the price BCBSM decides to pay for anesthesiology services in Michigan, they should be dismissed (again).

## II.   The Court Should Dismiss A4's State Law Claims Because A4 Has Not Plausibly Alleged that BCBSM Acted Illegally or with Malice.

The Court should also dismiss A4's state law claims because a necessary element of each of is that BCBSM must have acted illegally or with malice.  As BCBSM argued in its original motion to dismiss (*see* ECF No. 13, PageID.271–73.),[9] A4's allegations do not support any such plausible inferences, as the Court has now found in two separate opinions.

---

[9] In its original dismissal order, the Court did not find that A4's allegations stated any claims under state law; rather, it dismissed them for lack of jurisdiction.  ECF No. 41, PageID.1490.

**A. A4 Has Not Stated a Claim for Tortious Interference.**

A4 has failed to plead that BCBSM tortiously interfered with its hospital contracts.[10]  *See Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275; 829 N.W.2d 345, 348 (Mich. Ct. App. 2013).  Indeed, the Court's prior ruling controls in this matter—the Court found in its September 14, 2021 order that BCBSM and Trinity were "clearly acting out of their own legitimate business interests" when dealing with A4's departicipation.  ECF No. 41, PageID.1479.  Actions taken in furtherance of "legitimate business interests" cannot plausibly be construed to be unjustified, "inherently wrongful," or done with "malice."  *Knight Enters.*, 829 N.W.2d at 348; *see also Chrysler Intern. Corp. v. Cherokee Export Co.*, 134 F.3d 738, 745 (6th Cir. 1998) (stating that a malicious or wrongful act is one "which in the ordinary course will infringe upon the rights of another to his damage" *except* if it is done while

---

[10] To succeed on a claim of tortious interference with a contract, a plaintiff must prove: (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant.  *Knight Enters. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. App. 2013) (citations omitted).  To plead an unjustified instigation of breach, the plaintiff must allege either (1) "the intentional doing of a per se wrongful act," or (2) "the doing of a lawful act with malice" that is "unjustified in law for the purpose of invading the contractual rights or business relationship of another."  *Id.* at 348.  "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances."  *Id.* (quoting *Prysak v. R L Polk Co.*, 483 N.W.2d 629, 635 (Mich. App. 1992).  "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference."  *Knight Enters.*, 829 N.W.2d 345 at 348.  In other words, if the defendant was not primarily motivated by a desire to interfere with the plaintiff's contract, there can be no claim for tortious interference.  *See id.*

exercising "an equal or superior right"). A4's Amended Complaint offers nothing to suggest otherwise, and A4 has thus failed to allege that BCBSM tortiously interfered with any of its hospital contracts.

### B. A4's Allegations Do Not Support a Claim of Civil Conspiracy to Commit Tortious Interference.

A4's Amended Complaint does not support a claim for civil conspiracy to commit tortious interference with contract for two independent reasons—both because A4 has not stated an underlying claim of tortious interference (*see supra* Argument, Section II.A) *and* because the Court already held that A4's Hospital Conspiracy allegations do not give rise to a plausible factual inference of conspiracy.[11] Instead, the Court found that the only plausible inference is that BCBSM and Trinity acted independently as rational business actors, consistent with their legal rights to decide with whom to do business.

As to the lack of conspiracy, the Amended Complaint contains the same allegations to support a conspiracy as the previously dismissed complaint (*compare*

---

[11] To succeed on a claim of civil conspiracy, a plaintiff must establish (1) "a combination of two or more persons," (2) "by some concerted action," (3) "to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. App. 2003) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. App. 1992)). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., PC v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. App. 1986).

ECF No. 1, PageID.41–49 (¶¶ 86-106), *with* ECF No. 53, PageID.1963–72 (¶¶ 102-125)), and still does not plausibly allege any "concerted action" BCBSM took "in combination" with Trinity. *Advocacy Org.*, 670 N.W.2d at 580. Rather, A4's Amended Complaint alleges that: (1) BCBSM warned Trinity about the consequences of A4 leaving BCBSM's network, and (2) Trinity, in turn, moved to protect its own interests. *See* ECF No. 53, PageID. 1963–70. A4's primary support for its conspiracy theory is an email sent by Trinity executive Rob Casalou to A4, after A4 announced its intent to leave BCBSM's network. Though A4 casts this email as a conveyance of "threats" from BCBSM to A4 via Trinity, the Court has seen this email for what it is: an email sent *by Trinity* that does "not even assert that Defendant had already decided on what to do, let alone that it had formed an agreement with another entity." ECF No. 41, PageID.1479–80. When it granted BCBSM's Motion to Dismiss, the Court found Mr. Casalou's alleged communications with A4 were "insufficient to raise an inference of conspiracy" because "Casalou was relaying *potential* unilateral actions by the Defendant." *Id.* at PageID.1479 (emphasis in original).

Therefore, A4's claim for conspiracy to commit tortious interference fails as for the same reasons as it did before—all A4 has done is describe actions taken independently in furtherance of "legitimate business interests," which cannot support a plausible inference of a conspiracy. Nor are there plausible allegations of

12

"malice" or "inherently wrongful" conduct.  *See Knight Enters.*, 829 N.W.2d at 348.

Accordingly, when there is no underlying tort, there is no conspiracy.

## C. A4 Has Not Stated a Claim for Unlawful and Malicious Threats.

Similarly, A4's Amended Complaint does not state a claim for unlawful and

malicious threats because BCBSM never made any actionable threats, and the Court

already recognized as much.  A4 cannot satisfy any one of three elements required

to prove unlawful and malicious threats under Michigan law, let alone all three.[12]

*See People v. Harris*, 845 N.W.2d at 483.

First, A4 has not identified an oral or written communication made by

BCBSM that maliciously encompassed an actionable threat.  A4 again points to the

Mr. Casalou's email, but its characterization of this email as an actionable threat

delivered by BCBSM is unsupported.  As an initial matter, the email was sent to A4

---

[12] Under Mich. Comp. Laws § 750.213, "[a]ny person who . . . shall orally or by any
written or printed communication maliciously threaten any injury to the person or
property…of another with intent thereby to extort money or any pecuniary
advantage whatever, or with intent to compel the person so threatened to do or
refrain from doing any act against his will, shall be guilty of a felony . . . ."
Michigan recognizes the tort of civil extortion as an extension of criminal extortion.
*Lagonoy v. Gun*, 2022 Mich. App. LEXIS 912 at *5 (Feb. 17, 2022); *Gardner v.
Wood*, 429 Mich. 290, 301 (1987). To plead civil extortion, a plaintiff must
plausibly allege that the defendant (1) made an oral or written communication that
maliciously encompassed a threat to (2) injure the person or property of the plaintiff,
and (3) that the threat was intended to extort money, obtain a pecuniary advantage,
or compel the plaintiff to do, or refrain from doing, something against her will.
*People v. Harris*, 845 N.W.2d 477, 483 (Mich. 2014).

by Trinity—not by BCBSM.  Further, although A4 tries to,[13] it cannot characterize BCBSM's actions as malicious, which would require some degree illegality.[14]  The Court *just* held that A4 did not plausibly allege that BCBSM's communications with Trinity violated the antitrust laws.  *See* ECF No. 52, PageID.1905.  And again, the Court held that BCBSM was "clearly acting out of [its] own legitimate business interest[]" when it conveyed its concerns with A4's departication to Trinity (ECF No. 41, PageID.1480), which cannot, as a matter of law, be the "foundation" of "illegality" on which a claim for unlawful and malicious threats is built.  *Various Markets*, 908 F. Supp. at 468.

Likewise, A4 has not plausibly alleged the second or third required elements—that BCBSM threatened an injury to the person or property of Trinity or any other hospitals, or that BCBSM intended to (or actually did) compel Trinity or any other hospital to act against its will.  For example, A4 alleges that BCBSM told Trinity it would "look to steer work away from facilities with A4" if A4 went out-

---

[13] A4 claims that BCBSM threatened Trinity by conveying potential actions that would violate both Michigan and Federal antitrust law as expressed in Mr. Casalou's email.  *See* AC ¶¶ 191-92.

[14] *See Harris*, 845 N.W.2d at 487.  Only *malicious* threats—"threats made with the intent to commit a wrongful act without justification or excuse, or [threats] made in reckless disregard of the law or of a person's legal rights"—"rise to the level necessary to support an extortion" claim.  *Id.*; *see also Various Markets, Inc. v. Chase Manhattan Bank, N.A.*, 908 F. Supp. 459, 468 (E.D. Mich. 1995) (stating that "[i]llegality is the foundation" for an extortion claim).

of-network.  ECF No. 53, PageID.1964.  This is not a cognizable, threatened injury.  As with all of A4's claims, A4 has taken a standard-issue communication between two businesses that frequently work together and tried to recast it as an illegal ultimatum.

Nor did Trinity act against its will.  Trinity may well have been concerned that A4's departicipation could hurt Trinity's relationship with BCBSM, and it told A4 as much before A4 made the decision to go out-of-network.  *See id.*  And when A4 ultimately left BCBSM's network, Trinity unsurprisingly decided to terminate its relationship with A4.  *See id.* at PageID.1968.  But as the Court found, BCBSM's communications with Trinity and Trinity's corresponding dealings with A4 are properly characterized as BCBSM and Trinity "acting out of their own legitimate business interests."  ECF No. 41, PageID.1479; *see also Cherokee Export Co.*, 134 F.3d at 745.

The Court has repeatedly held that these independent actions by separate business actors are not actionable (*see* ECF No. 41, PageID.1479; ECF No. 52, PageID.1899), and for the same reasons, A4 has failed to state a claim for unlawful and malicious threats.

## D. A4 Has Failed to State a Claim For Duress.

A4 has also not stated a plausible claim for duress because, again, BCBSM did not engage in any wrongful conduct and all parties acted according to their own

15

independent business interests. Thus, like the other state law claims, A4 cannot plead any of the three required elements.[15] *See Barnett v. Int'l Tennis Corp.*, 263 N.W.2d 908, 913 (Mich. App. 1978).

A4 fails under the first element because the Court has found time and again that BCBSM did not engage in any wrongful or unlawful behavior vis-à-vis the episode involving A4's threatened departicipaton from Trinity and Beaumont. *See* ECF No. 41, PageID.1479; ECF No. 52, PageID.1899–1900. Moreover, A4 was not deprived of its "unfettered will" (the second element of duress). *Hungerman*, 473 N.W.2d at 721. A4 made its move to try to leverage BCBSM, the dominos of that decision fell, and A4 decided it was better to go back into BCBSM's network. "As a rule, duress will not prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation, and reflection." *Rudzinski v. Rudzinski*, 2022 Mich.

---

[15] Duress is present when a person, by the unlawful act of another, is induced to make a contract under circumstances that deprive her of free will. *Norton v. State Highway Dep't*, 24 N.W.2d 132, 135 (Mich. 1946); *see also Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 404 N.W.2d 725, 728 (Mich. App. 1987) ("Duress requires compulsion or coercion by which one is illegally forced to act by fear of serious injury to person, reputation or fortune.") (internal citation omitted). To set aside a contract based on economic duress, the plaintiff must adequately allege that (1) "he has been the victim of a wrongful or unlawful act or threat," (2) the unlawful act or threat "deprive[d] [the plaintiff] of his unfettered will," and (3) the plaintiff was "compelled to make a disproportionate exchange of values or to give up something for nothing." *Barnett v. International Tennis Corp.*, 263 N.W.2d 908, 913 (Mich. App. 1978) (quoting Williston, Contracts, § 1617, 704 (3d ed. 1970)); *see also Hungerman v. McCord Gasket Corp.*, 473 N.W.2d 720, 721 (Mich. App. 1991).

App. LEXIS 1264 (Mar. 10, 2022) (citations omitted).  A4 here has not alleged that it did not know all of the facts about reentering BCBSM's network or that it did not have ample time and opportunity to consider such a move.  Rather, A4 alleges that it reentered BCBSM's network because "if it remained out-of-network it risked losing its independent contractors."  ECF No. 53, PageID.1999.[16]  A4's measured decision that reentering BCBSM's network would be better for its bottom line than remaining out-of-network does not evince a lack of "unfettered will."  *See Hungerman*, 473 N.W.2d at 721.

Finally, A4 has not made any allegations to support the third element—that it was "compelled to make a disproportionate exchange of values or to give up something for nothing."  *Barnett*, 263 N.W.2d at 913.  A4 decided that its gambit had failed, and rejoined BCBSM's network, agreeing to do work for the rates that BCBSM was willing to pay.  A4 now alleges that it was somehow pressured into receiving BCBSM's allegedly "reduced rates . . . for anesthesiology services," but the Court has held repeatedly that A4 cannot recover for its alleged underpayment

---

[16] A4 has not made any allegations that BCBSM acted unlawfully by terminating its relationships with A4's independent contractors beyond a conclusory statement that those terminations were "without cause" and "without notice."  ECF No. 53, PageID.1973.  Such conclusory statements cannot support an inference that BCBSM acted unlawfully, as A4 has not described the terms of those alleged contracts or which of their provisions BCBSM breached.  But even assuming A4 adequately alleged that BCBSM breached its contracts with A4's independent contractors, that would still be insufficient.

as a result of the 2019 episode with Trinity, Beaumont, and BCBSM.  ECF No. 52, PageID.1905.   A4 makes no other mention of why its agreement to reenter BCBSM's network involved a "disproportionate exchange of values."  *See Barnett*, 263 N.W.2d at 913.  A4 has therefore failed to plead a claim for duress.

### III.   The Court Should Also Strike A4's Hospital Conspiracy Allegations Because They Exceed the Scope of the Court's Leave to Amend.

Finally, the Court should strike A4's Hospital Conspiracy allegations in their entirety.  Because A4's original complaint was dismissed in its entirety and A4 may only file a new complaint with the Court's permission, the Court should strike all of A4's allegations that exceed the scope of its order granting leave.[17]

#### A. A4's "State Law Claims" Rely on the Exact Same Allegations the Court Denied A4 Leave to Amend.

The Court's order was straight-forward about what A4 was permitted to put in its Amended Complaint.   The Court permitted A4 to "proceed on its federal

---

[17] *Wheat v. Chase Bank,* No. 3:11–cv–309, 2014 WL 457588 at *6–7 (S.D. Ohio Feb. 3, 2014) ("When a court grants a party leave to amend a complaint, subsequent amendments that exceed the scope of the leave granted may be stricken under Rule 12(f).") (citing *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 362 (S.D. Ohio 2012) (striking material from plaintiff's amended complaint "because the new allegations and claim against [defendant] clearly exceed any permissible bounds of the Court's prior grant," which only allowed plaintiff to name another defendant)); *In re Keithley Instruments, Inc., Deriv. Litig.*, 599 F. Supp. 2d 908, 912 (N.D. Ohio 2009) (striking complaint that exceeds scope of leave granted, stating that "[t]he Court certainly did not understand counsel's request as one for permission to reformulate the complaint, change the basis for the Court's jurisdiction, and assert new theories of liability based upon the same set of facts")).

antitrust claims ***based solely*** on its allegations related to the Blues Conspiracy." ECF No. 52, PageID.1910 (emphasis added). It was equally clear that A4 was not permitted to include any of its Hospital Conspiracy-related allegations in its Amended Complaint. *See id.* at PageID.1905*; see also id.* at PageID.1901 ("The Court finds that A4 has failed to plead factual allegations giving rise to a Hospital Conspiracy. As such, A4 lacks seller-based standing to raise a cognizable antitrust injury premised on the Hospital Conspiracy, and its motion for leave to amend these allegations is DENIED in part as futile.").

Yet, A4 has filed an Amended Complaint that retains nearly all of the *exact same allegations* it included in its proposed amended complaint. For example, paragraphs 100–134 of the Amended Complaint were formerly included in a section titled "BCBSM Maintains Monopsony Power by Enforcing the Hospital Conspiracy and Retaliating Against Anesthesiologists Who Reject BCBCM's Uniform Rate." ECF No. 43-2, PageID.1601. However, in its as-filed Amended Complaint, A4 simply changed the title of the section to no longer reference "Monopsony Power" or the "Hospital Conspiracy," and removed the word "antitrust" and conspiracy references throughout the section. ECF No. 53, PageID.1963–75.

Below are screenshots showing the changes to the table of contents in A4's proposed amended complaint and the Amended Complaint A4 filed which demonstrate the minor changes made.

19

After A4 Attempts to Leave BCBSM's Network, BCBSM ~~Enforces Compliance on the Conspiring Hospitals Where A4 Serves Patients.~~ ~~20~~Undertakes a Campaign of Tortious Interference and Duress Against A4 ..... 14

IV.   BCBSM ~~Maintains Monopsony Power by Enforcing the Hospital Conspiracy and Retaliating~~Retaliates Against Anesthesiologists Who Reject BCBSM's

20-cv-12916-TGB-APP ECF No. ~~43-2~~53, PageID.~~1535~~1913 Filed ..... ~~63~~47

Similarly, the body of the Amended Complaint is nearly identical to the proposed amended complaint, save for deleting sentences specifically referring to the Hospital Conspiracy. For example:

department.

~~139~~109. In a normal market, A4's assurances not to balance bill patients, combined with A4's record of success at Trinity and Beaumont, would have caused those hospitals to continue working with A4, even as it attempted to negotiate a competitive rate with BCBSM. However, this was not a normal market. ~~Michigan hospitals had conspired with each other and with BCBSM to require anesthesiologists to accept BCBSM's uniform rate. And now~~

~~BCBSM was seeking to enforce that conspiracy against Trinity and Beaumont.~~

142112. A4 also learned from Casalou that BCBSM had caused the president

of another Michigan hospital in BCBSM's network (and a co-conspirator in

the hospital conspiracy) to contact Trinity and warn that the hospital's parent

Case 2:20-cv-12916-TGB-APP ECF No. 43-2, PageID.1606 Filed 10/15/21 Page 73
of 121

organization was "seriously considering telling its patients that they should not

use Trinity facilities for any care that would require anesthesia," despite there

being a reciprocity agreement between Trinity and that organization. Thus as part

of BCBSM's efforts to enforce the hospital conspiracy, BCBSM was causing a co-

conspirator to exert pressure on Trinity.

145115. Along with pressuring hospitals to cease doing business with A4,

BCBSM also took additional steps to maintain its monopsony power by

tortiously interfering interfered with A4's contracts with Trinity hospitals and

A4's contracts with A4's employees. Specifically, BCBSM (i) coerced and

induced Trinity's hospitals to breach the non-solicitation obligations they owed

to A4; and (ii) acted through, and in concert with, Trinity to tortiously interfere

with the non-compete obligations owed to A4 by certain of A4's employees.

   As the Court can see, these are merely superficial changes that do not address

the crux of the Court's order, which found that the uniform rates BCBSM pays to

A4 are not actionable unless they arise from an anticompetitive conspiracy, and that

A4's allegations regarding the Hospital Conspiracy are not plausible.  *See* ECF No.

52, PageID.1881.  A4 has ignored all of the Court's reasoning and rejections of A4's

claims based on A4's local fact pattern and is attempting to use the final line of the order as a loophole through which it can replead the exact same Hospital Conspiracy allegations the Court twice dismissed, repackaged now as stand-alone state law claims, unrelated to the Blues Conspiracy claim.

Therefore, the Court should strike paragraphs 1(b); 28-44; 54-55; 100-134; 176 (in part); 179 (in part); 180-206; and 231-233 because they exceed the scope of A4's leave to amend.

## B. A4's "State Law Claims" Do Not Have Sufficient Linkage to the Blues Conspiracy Claims to Permit Supplemental Jurisdiction.

A4 has prepared three separate complaints in this matter, each of which have contained four state law claims.[18]   Each version of the complaint, including A4's most recently filed Amended Complaint, has based the state claims only on the factual allegations related to A4's local Hospital Conspiracy theory.[19]   Other than involving the same defendant, *none* of the complaints have identified a rational linkage between the Blues Conspiracy and the state law claims beyond vaguely implying that the Blues' Conspiracy enables BCBSM's allegedly wrongful local

---

[18] *See* ECF No. 1, PageID.77–81; ECF No. 43-2, PageID.1641–45; ECF No. 53, PageID.1995–99.

[19] For example, A4 does not tie any of the following to the amended license agreement at the center of its alleged Blues Conspiracy: (1) BCBSM's alleged coercion and inducement of Michigan hospitals to breach non-solicitation clauses; (1) inducement of A4's doctors to go work for Trinity; (3) alleged malicious threats to Trinity and Beaumont; or (4) the supposed duress BCBSM somehow imposed on A4.

conduct.  *See, e.g.*, ECF No. 53, PageID.1930 (suggesting that A4 left BCBSM's network because "BCBSM and its co-conspirator[] [Blues]" conspired to pay "A4 at below-competitive prices."); *id.* at PageID.1962 (suggesting that the Blues Conspiracy "increase[ed] BCBSM's market power . . . enabling BCBSM to pay anesthesiologists less than what BCBSM would have paid absent these violations of the antitrust laws.").

Having properly found twice that A4's allegations related to its recent, local episodes at Trinity and Beaumont did not state a claim, A4 should not be permitted to reassert those exact same allegations with new titles as state law torts.  Moreover, the Blues Conspiracy allegations have no rational linkage to A4's local dispute with BCBSM, Trinity, and Beaumont, and they never have.  If A4's state court claims are not substantively dismissed, the line in the Court's order retaining supplemental jurisdiction most reasonably refers to supplemental jurisdiction over any state law claims A4 may have *directly related* to the Blues Conspiracy allegations.[20]  As currently alleged, none of A4's state law claims have any rational link to its sole

---

[20] Without a common nucleus of operative fact, the exercise of supplemental jurisdiction over A4's state law claims would be improper under Section 1367(a). *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2011). "[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." (citation omitted). The "case or controversy" requirement is met when state and federal law claims arise from the same contract, dispute, or transaction. *Id.*

surviving federal claim—the Blues Conspiracy.  If that remains the case, A4's state claims cannot be permitted to remain in federal court under Section 1367(a) and should be dismissed for lack of jurisdiction as well.

## CONCLUSION

For the foregoing reasons, this Court should dismiss A4's state law claims and strike all of A4's allegations that exceed the scope of its order granting leave to amend.

Dated: October 21, 2022

Respectfully submitted,

SHEARMAN & STERLING LLP
By: */s/ Todd M. Stenerson*
Todd M. Stenerson (P51953)
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

Rachel Mossman Zieminski (*admitted in E.D. Mich.*, Texas Bar 24131967)
2828 N Harwood St 18th Floor
Dallas, TX 75201
(214) 271-5777

BODMAN PLC
By: */s/ Sarah L. Cylkowski*
Sarah L. Cylkowski (P75952)
Rebecca D. O'Reilly (P70645)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 259-7777
roreilly@bodmanlaw.com

*Attorneys for Defendant Blue Cross Blue Shield of Michigan*

24

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I caused the foregoing document to be served via ECF on all attorneys of record. I declare under penalty of perjury that the foregoing statements are true and correct.

By: */s/ Todd M. Stenerson*
Todd M. Stenerson
401 9th Street, Suite 800
Washington, DC 20004
(202) 508-8000
todd.stenerson@shearman.com

*Attorneys for Defendant BCBSM*